UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Respondent, § | |
| § | |
| V. § | CRIMINAL ACTION NO. H-92-270 |
| § | CIVIL ACTION  NO. H-06-3452 |
| JULIO CESAR VALENCIA-QUINTANA, § | |
| § | |
| Defendant-Movant. § | |

**MEMORANDUM AND RECOMMENDATION DENYING MOVANT'S
  § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

Before the Magistrate Judge in this proceeding under 28 U.S.C. § 2255 is the United States' Answer (Document No. 396) to Movant Julio Cesar Valencia-Quintana's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 388).  Having considered Valencia-Quintana's § 2255 Motion, Memorandum in Support and Affidavit (Document Nos. 388, 390, 393), the United States' Answer, in which the United States asks that the § 2255 motion be dismissed or summary judgment granted, the record of the proceedings in the underlying criminal case and on appeal, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Valencia-Quintana's § 2255 Motion to Vacate, Set Aside or Correct Sentence be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice on the merits.

**I.     Procedural History**

Movant Julio Cesar Valencia-Quintana ("Valencia-Quintana"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.  This is Valencia-Quintana's first motion pursuant to § 2255.

On February 24, 1993, Valencia-Quintana was charged in a second superseding indictment

with conspiracy to import cocaine, and aiding and abetting the importation of cocaine. At the time of his Indictment, Valencia-Quintana was in prison in the Dominican Republic on another drug offense. On October 18, 2001, after being released from custody in the Dominican Republic, and while his flight from the Dominican Republic to Colombia was on a scheduled stop in Miami, Valencia-Quintana was arrested by the United States Marshal's Service. Valencia-Quintana was brought to this District where he entered a plea of not guilty to the charges. On May 18, 2002, following a three day trial, Valencia-Quintana was found guilty by a jury of the two offenses alleged against him in the Indictment. On October 4, 2002, following the preparation of a pre-sentence investigation report, to which Valencia-Quintana filed objections, Valencia-Quintana was sentenced to a term of life imprisonment on each count, a five year term of supervised release, and a $10,000 fine. (Document No. 357). Judgment was entered on October 15, 2002. (Document No. 359).

Valencia-Quintana appealed to the Fifth Circuit Court of Appeals. On June 29, 2005, the Fifth Circuit affirmed his conviction and sentence in an unpublished opinion. (Document Nos. 384 & 385). Valencia-Quintana's petition for writ of certiorari was denied on October 31, 2005. Within one year of that denial, Valencia-Quintana filed his § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 388). The Government has filed an Answer to Valencia-Quintana's motion. This § 2255 proceeding is now ripe for ruling.

**II.   Claims**

Valencia-Quintana raises seven claims in his § 2255 Motion:

1.   that his trial counsel was ineffective for failing to investigate and develop facts needed to effectively impeach the Government's "star" informant witness, Carlos Acuna;

2. that his trial counsel was ineffective for failing to object to, and file a motion to dismiss the Indictment, based on the Government's misconduct;

3. that his trial counsel was ineffective for failing to object to and exclude evidence of drug conviction in the Dominican Republic;

4. that his trial counsel was ineffective for failing to challenge the DEA agents' competency to testify about conversations that were conducted in Spanish;

5. that his trial counsel was ineffective for failing to object to the Government vouching for its star informant witness, Carlos Acuna;

6. that his trial counsel was ineffective for failing to effectively communicate with him prior to and during trial; and

7. that his appellate counsel was ineffective for failing to raise all issues that were raised on appeal in the petition for writ of certiorari.

### III. Discussion

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong

presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight.

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). With

respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989). Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose v. Johnson*, 141 F.Supp.2d 661, 704-705 (S.D. Tex. 2001). "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

As for *Strickland's* prejudice prong, in the context of an ineffective assistance of appellate counsel claim, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* at 474-75.

5

### A.     Impeachment of Acuna

In his first claim, Valencia-Quintana maintains that his counsel was ineffective for failing to investigate and discover facts needed to impeach the Government's main witness, Carlos Acuna. According to Valencia-Quintana, counsel should have discovered and questioned Acuna about the money he received as an informant from the Government, his "contingent" fee arrangement with the Government, and his romantic relationship with a DEA analyst (Sanda Neill). In addition, Valencia-Quintana maintains that Acuna's testimony at trial was false, that the Government knew or should have known of Acuna's false testimony at trial, that Acuna entrapped him into committing the offense, that the Government failed to notify him of its fee arrangement with Acuna in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that the informant instruction in the jury charge, which instructed the jury on how to consider Acuna's testimony, was insufficient to protect his rights.

A review of the record shows that Valencia-Quintana's trial counsel, John Friesell, was not ineffective in connection with his cross-examination and impeachment of Carlos Acuna. The record shows that Friesell questioned Acuna about the money he had received as an informant for the Government, Acuna's requests for additional "reward" money, and Acuna's relationship with Sandra Neill. Trial Transcript Volume 2 (Document No. 374) at 218-224. Friesell also questioned Acuna about his prior criminal record and his cooperation with the Government which resulted in the reduction and/or dismissal of other criminal charges. *Id.* at 214-218. Valencia-Quintana has not identified what more Friesell should have done to impeach Acuna. In addition, there is nothing in the record to indicate that the result of the trial would have been different if Acuna had, in some way, been further impeached. Accordingly, Friesell was not ineffective within the meaning of *Strickland*, and no relief is available on this claim.

As for Valencia-Quintana's other claims, of perjured testimony by Acuna, of entrapment by Acuna, of suppressed evidence, and of deficiencies in the jury charge, none of these claims was raised by Valencia-Quintana in his direct appeal. The claims are, as a consequence, procedurally barred from review in this § 2255 proceeding.[1]

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without

---

[1] The Government did not, in its Answer to Valencia-Quintana's § 2255 motion, either separately identify these claims or raise the issue of a procedural bar. The Court, however, may *sua sponte* consider and determine whether claims are procedurally barred from review. *See United States v. Willis*, 273 F.3d 592, 596-97 (5th Cir. 2001).

showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992). Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'"). Here, because Valencia-Quintana has not made the required showing of cause and prejudice, or that he is actually innocent of the drug offenses of which he was convicted, Valencia-Quintana's claims of perjured testimony, entrapment, suppression of evidence, and deficient jury instructions are all procedurally barred from review.

    **B.**    **Government Misconduct**

In his second claim, Valencia-Quintana complains that his trial counsel was ineffective for failing to challenge the Government's misconduct in the case, including, the Government's failure to verify, with recordings, the conversations Acuna claimed to have had with him and the Government's failure to have Acuna's conversations with him independently translated. Valencia-Quintana also maintains that his counsel was ineffective for failing to raise or take stronger issue with the romantic relationship that existed between Acuna and DEA Agent Sandra Neill during the course of this investigation.

The record in this case shows that counsel complained of, and took issue with, the absence of any recordings or translations of conversations between Valencia-Quintana and Acuna. *See* Trial Transcript Volume 1 (Document No. 373) at 113-114; Volume 2 (Document No. 374) at 250-251, 277. Evidence was introduced, however, through the testimony of Acuna, that he completely and

8

accurately translated the conversations he had with Valencia-Quintana to DEA Agent Gardner. Trial Transcript Volume 1 (Document No. 373) at 190, 194. In addition, Agent Gardner and Agent McDaniel explained why recordings were not made, and why Acuna was used to translate the conversations that were had with Valencia-Quintana. Trial Transcript Volume 1 (Document No. 373) at 170; Volume 2 (Document No. 374) at 250. With respect to Acuna's relationship with Sandra Neill, Friesell questioned Acuna about that relationship and about how such a relationship violated DEA policies. Trial Transcript Volume 2 (Document No. 374) at 221-223, 226. In addition, Acuna disclosed that Neill had been asked resign and take early retirement when her relationship with Acuna was disclosed. *Id.* at 226. Valencia-Quintana has not alleged or identified what more his counsel could or should have done, or that any additional action by counsel would have led to a different result.[2] Under *Strickland*, no relief is available on this ineffectiveness claim.

### C. Dominican Republic Conviction

In his next ineffectiveness claim, Valencia-Quintana faults his trial counsel for not doing more to exclude evidence of his prior drug conviction in the Dominican Republic. According to Valencia-Quintana, counsel should have argued, in reliance on the case of *Old Chief v. United States*, 519 U.S. 172 (1997), that the details of his prior offense should not have been admitted as long as he was willing to stipulate that he had a prior felony conviction.

The record shows that Friesell sought to exclude evidence of Valencia-Quintana's prior conviction in the Dominican Republic on the basis that Valencia-Quintana had been pardoned and the Government did not obtain a certified copy of any prior conviction, and on the basis that the

---

[2] Valencia-Quintana raised a claim of "outrageous government conduct" on appeal. That claim, along with all of Valencia-Quintana's other claims, was rejected by the Fifth Circuit. *See United States v. Valencia-Quintana*, No.02-21225 (Document No. 385) at 8-9.

9

admission of evidence of Valencia-Quintana's prior drug offense was more prejudicial than probative. The Court rejected both arguments, ruling as follows:

> THE COURT: All right. The consulted authorities on this, first, the question is raised as to whether the Government, if the Defendant testifies, is able to cross-examine him in order to establish a prior conviction.
>
> Rule 609(a)(1) was amended in 1990. Prior to that time, the rule provided that the prior permitted conviction evidence could be admitted "if elicited from the witness or established by public record during cross-examination." That phrase was deleted by the amendment in 1990.
>
> The implication of the deletion of that language was not to eliminate the ability of the examiner to elicit from a witness during cross-examination the prior conviction, but rather was to permit additional ways by which the examiner would be able to prove the prior conviction, if not done through cross-examination.
>
> The advisory committee explained its motive in this language: "The change removes from the rule the limitation that the conviction may only be elicited during cross-examination, a limitation that virtually every circuit has found to be inapplicable. It is common for witnesses to reveal on direct examination their convictions to 'remove the sting' of the impeachment."
>
> Thus, the amendment does more than just permit the admission of convictions on the direct examination. It also, as set forth in Wright and Gold Federal Practice and Procedure, Section 3164, also completely eliminated restrictions on the admissibility of extrinsic evidence. Thus, it is now possible to prove convictions with documentary evidence other than public records and with testimony of any witness, not just the witness whose credibility is at issue.
>
> Now, that having been determined, I would deny the Motion in Limine last made by the Defendants to limit the Government and restrict the Government in its cross-examination based upon its not having presented to you some certified copy or other documentary evidence of the prior conviction.
>
> Turning then to the other question raised by – I might also say, in support of the ruling that I've just made, that in <u>Wilson versus Attaway</u>, 757 F.2d 1227, 1985, 11th Circuit decision, the Court held that under Federal Rules of Evidence 609(a), a certified copy of the conviction is not required if evidence of the conviction is elicited during cross-examination.
>
> Now, with respect to the second issue, which had been first raised this

10

morning by the Defendant, the Defendant's Motion in Limine, as to whether the examination should not be permitted because of some pardon that is claimed based on rehabilitation.  The law on this is set forth also in <u>Wright and Gold Federal Practice and Procedure,</u> at Section 6137, where the authority states that, "The burden of showing the basis for the pardon or its equivalent falls upon the party asserting the applicability of Subdivision (c) of Rule 609.  This allocation of the burden can be crucial since the certificate that documents the pardon or its equivalent may say nothing concerning its basis and there may be little other evidence on the subject.  However, where the certificate does state that the pardon or its equivalent was based on rehabilitation, the courts may accept this as determinative.  Further, where the pardon or its equivalent was issued pursuant to specific statutory or Constitutional authorization, its basis can sometimes be gleaned from the applicable provision."

      Now, at the present time I have not been provided by the Defendant any certificate or other documentary proof of pardon based upon the language of 609(c), namely that the conviction was pardoned based upon a finding of the rehabilitation of the person convicted.

MR. FRIESELL:  Your Honor, I don't have a certificate.  All I do have is the newspaper, which is in Spanish, which is an article about Mr. Valencia and his pardon.  That's all I have to offer.

THE COURT:  Even that has not been offered in evidence.

MR. FRIESELL:  No.  Could I have just a second?

THE COURT:  Yes, sir.

MR. FRIESELL:  I do have a copy of a newspaper article, and I would submit that to the Court.  It would have to obviously be interpreted.

THE COURT:  Do you wish to have the court interpreter read to me what this document is?

MR. FRIESELL:  Yes.

THE COURT:  If you will call to her attention what portion of it should be read to me.

THE INTERPRETER:  The first two paragraphs.

THE COURT:  What does the document appear to be?  What is it headlines or what

11

does it purport to be a copy of?

THE INTERPRETER: "The pardoned Don Emilio, he was the person who promoted the rehabilitation project at the Monte Plata Prison." And this is <u>Ultima Hora</u>, which is a newspaper dated Friday, December 24, 1999, from Santo Domingo.

THE COURT: Dominican Republic?

THE INTERPRETER: The Dominican Republic.

THE COURT: All right.

THE INTERPRETER: It doesn't say so, but that's where it is.

    "Fairness and justice. A prisoner from Colombia over 50 years of age, during the nine years that he had resided at the prison, he had dedicated himself to teaching how to write to his prison mates and to teach them different skills and to awaken in them the different artistic abilities that they have. He was one of 143 prisoners that were pardoned by the President, during Christmas Eve.

    "Julio Cesar Valencia-Quintana, also known as Don Emilio, expects, starting today, that the sun will shine without seeing bars in between himself and the sun, If his prison mates in his cell are not sure whether to be happy or sad, it's because their main mentor and guide and their educator is leaving."

THE COURT: Is that the extent of the offer?

MR. FRIESELL: Yes, Your Honor.

THE COURT: All right. Assuming the – does the Government wish to say anything on that?

MR. STABE: I would object to it. Obviously, it's informative, but it's nothing official in any way.

THE COURT: Well, assuming that the article is authentic and an accurate report, I find that it evidences – it does not evidence that the person – that the Defendant in this case, Valencia-Quintana, was pardoned based upon the rehabilitation of him, but apparently was pardoned along with over a hundred other prisoners as a Christmas Eve pardon, which is often done in many countries when people had neared the end of their terms or had served sufficiently long to warrant, in the judgment of those who are able to provide the pardon, a pardon at that time.

> Whether it's an actual – further, the Court is unable to determine whether it's an actual pardon for the crime itself or simply an early release pardon in that sense. So, fort those reasons, I would find that the proof offered by the Defendant is not sufficient to bring the – is not sufficient to establish the proof required by Rule 609(c).

Trial Transcript Volume 2 (Document No. 374) at 283-288

While Valencia-Quintana argues that it was Friesell's failure to cite to and rely on the *Old Chief* case that resulted in the Court's ruling on the admissibility of Valencia-Quintana's prior conviction, there has been no showing *Old Chief* would have applied to Valencia-Quintana. In *Old Chief*, the United States Supreme Court held that when a prior conviction is an element of a current offense, a district court abuses its discretion when it rejects a defendant's offer to stipulate to the existence of the prior conviction. In *United States v. Cisneros*, 203 F.3d 333, 348 n. 14 (5th Cir. 2000), the Fifth Circuit made it clear that *Old Chief* applied only to cases "involving proof of felon status." Here, Friesell sought to exclude from evidence Valencia-Quintana's prior conviction in the Dominican Republic so that Valencia-Quintana, if he testified in his own defense, would not have to testify and admit the existence of that prior conviction. Unlike in *Old Chief*, the existence of Valencia-Quintana's prior drug conviction was not an element of the offense Valencia-Quintana was charged with and convicted of in this case. Because this case did not involve "proof of felon status," Friesell's failure to cite to and rely on *Old Chief* does not constitute ineffectiveness within the meaning of *Strickland*.

### D. Competency in Spanish of DEA Agent(s)

In his next claim, Valencia-Quintana claims that his trial counsel was ineffective for failing to challenge the competency and qualifications of the DEA agents to testify regarding conversations that Valencia-Quintana purportedly had with Acuna in Spanish. According to Valencia-Quintana,

DEA Agent Garner, who testified that he did not speak Spanish, should not have been allowed to testify about the contents of any conversations that were had in Spanish.

The record shows that Friesell objected, prior to the commencement of the trial, to Agent Garner testifying about the contents of conversations that were held in Spanish. Trial Transcript Volume 1 (Document No. 373) at 9-11. The Court reserved its ruling until such time as the issue was raised by the testimony. *Id.* at 11. Then, at the time of Agent Garner's testimony, Friesell again objected to Garner testifying about conversations that were held in Spanish. *Id.* at 122, 123, 143, 144, 147, and 153. The Court overruled Friesell's objection. *Id.* Valencia-Quintana has not argued or identified what more counsel could have or should have done. Thus, on this record, counsel was not ineffective within the meaning of *Strickland*, and no relief is available on this claim.

### E.    Vouching for Acuna

In his next ineffectiveness claim, Valencia-Quintana complains that his trial counsel failed to object to the Government "vouching" for the credibility of Acuna during closing arguments. The record shows, however, that Friesell objected to the Government's closing argument in which it attempted to vouch for Acuna. Trial Transcript Volume 3 (Document No. 375) at 320. The Court overruled the objection. *Id.* In addition, the Fifth Circuit rejected the "vouching" claim on direct appeal. *United States v. Valencia-Quintana*, No.02-21225 (Document No. 385) at 8-9. Under *Strickland*, no relief is available on this ineffectiveness claim.

### F.    Communication with Counsel

In his final ineffective assistance of trial counsel claim, Valencia-Quintana contends that his trial counsel was ineffective for failing to communicate with him. Valencia-Quintana maintains that his trial counsel did not speak fluent Spanish, did not adequately consult with him prior to and during

14

trial, and told him not to talk to him during trial.

In response to this claim of ineffectiveness, the Government has offered the affidavit of Friesell, in which he describes his ability to communicate in Spanish, and his general routine of having clients communicate with him in writing during trial.  Friesell states as follows in his affidavit:

> I studied Spanish from 5th through 12th grade while attending St. Vincent de Paul and Strake Jesuit College Preparatory.  I obtained my B.A. in 1994 from the University of Texas in Austin.  While at the university of Texas I continued my study of Spanish, taking at least 5 semesters of Spanish courses including at least two upper level Spanish courses:  Spanish literature and Spanish Composition.  I graduated from the University of Houston Law Center in 1997.  In January 1998, I attended a Spanish Immersion Course in San Jose, Costa Rica for five and a half weeks.  With the exception of one civil matter, my practice has been devoted exclusively to criminal defense since March of 1998.
>
> I am conversant in Spanish and throughout my meetings with Mr. Valencia we spoke to each other in Spanish.  I can also read and write Spanish.  Throughout my representation of Mr. Valencia I understood what Mr. Valencia told me about his case and Mr. Valencia's responses to my questions and statements were consistent with his understanding of me.  It is my practice during the course of a trial to a give the defendant a pen and a legal pad to take notes during testimony.  I also encourage clients to write notes to me rather than speak to me during testimony so that I can consider the client's concerns while not being distracted from testimony.  This is what I would have done with Mr. Valencia.  I never told Mr. Valencia that he couldn't communicate with me at all during the trial.  During the course of representing Mr. Valencia, I met with Mr. Valencia numerous times at the Federal Detention Center in order to prepare his defense.

Affidavit of John Friesell, attached to the Government's Answer (Document No. 396-2) at 1-2.

Given the contents of Friesell's affidavit, the recognition by the Court that Friesell is a Spanish-speaking attorney,[3] and Valencia-Quintana failure to complain, until now, about his ability to communicate with his attorney, Valencia-Quintana's complaints about Friesell's ability to

---

[3] Friesell is on the panel of Spanish-speaking attorneys approved by the Court for appointment under the Criminal Justice Act.

15

communicate in Spanish are unavailing. In addition, given counsel's need to focus on the trial proceedings and the testimony of the Government's witnesses, it was not unreasonable for Friesell to ask that Valencia-Quintana communicate with him in writing. This ineffectiveness claim also fails under *Strickland*.

  **G.**  **Issues Raised in Petition for Certiorari**

  In his final claim, Valencia-Quintana maintains that his appellate counsel was ineffective for failing to raise all the claims that were raised on appeal in the petition for writ of certiorari that counsel filed with the United States Supreme Court.

  A criminal defendant is entitled to a direct appeal and is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-94 (1985). A defendant's right to the assistance of counsel ends when the Court of Appeals rules on the defendant's direct appeal. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further."). Consequently, a criminal defendant has no right to counsel in connection with the filing of petition for writ of certiorari with the United States Supreme Court, and no right, under the Sixth Amendment, to the effective assistance of counsel in connection with the filing of a petition for writ of certiorari with the United States Supreme Court. *See Wainwright v. Torna*, 455 U.S. 586, 588 (1982); *Miller v. Keeney*, 882 F.2d 1428, 1431-33 (9th Cir. 1989); *Van Harris v. United States*, ___ F.Supp.2d ___ , 2007 WL 431549 (S.D. W.Va. 2007). This claim of ineffective assistance in connection with the filing of a petition for writ of certiorari therefore fails.

**IV.     Conclusion and Recommendation**

Based on the foregoing, the conclusion that no relief is available to Valencia-Quintana on any of the claims he raises herein, the Magistrate Judge

RECOMMENDS that Movant Julio Cesar Valencia-Quintana's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 388) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 22nd   day of  March, 2007.

Frances H. Stacy
United States Magistrate Judge